1  Timothy E. Cary, Esq. (SBN 093608)
2  Ahmed S. Diab, Esq. (SBN 262319)
   **LAW OFFICES OF ROBERT A. STUTMAN, P.C.**
3  74-145 St. Charles Place, Suite 1
   Palm Desert, CA 92211
4  Telephone: (760) 776-7190
5  Facsimile: (760) 776-7191
6  Email: CaryT@StutmanLaw.com
          DiabA@StutmanLaw.com
7
8  Attorneys for Plaintiffs
9

10                  UNITED STATES DISTRICT COURT
11
12          FOR THE CENTRAL DISTRICT OF CALIFORNIA
13              SOUTHERN DIVISION – SANTA ANA
14
15

16 | AMERICAN SELECT INSURANCE | Case No.: |
   | COMPANY, THE CINCINNATI |
17 | INSURANCE COMPANY, ERIE | **COMPLAINT FOR DAMAGES AND** |
18 | INSURANCE COMPANY, ERIE | **INJUCTIVE RELIEF** |
   | INSURANCE EXCHANGE, ERIE |
19 | INSURANCE PROPERTY & | **JURY TRIAL DEMANDED** |
20 | CASUALTY COMPANY, THE FIRST |
   | LIBERTY INSURANCE |
21 | CORPORATION, FIRST NATIONAL |
22 | INSURANCE COMPANY OF |
   | AMERICA, HARLEYSVILLE |
23 | PREFERRED INSURANCE |
24 | COMPANY, LIBERTY INSURANCE |
   | CORPORATION, LIBERTY MUTUAL |
25 | FIRE INSURANCE COMPANY, |
26 | LIBERTY MUTUAL INSURANCE |
   | COMPANY, LM INSURANCE |
27 | CORPORATION, PEERLESS |
28

                              1

INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF
AMERICA, SAFECO INSURANCE
COMPANY OF ILLINOIS, SAFECO
INSURANCE COMPANY OF
INDIANA, UNIVERSAL PROPERTY
& CASUALTY INSURANCE
COMPANY, WESTFIELD
INSURANCE COMPANY, and
WESTFIELD NATIONAL
INSURANCE COMPANY, a/s/o
INSUREDS, as listed on "Schedule A"
and "Schedule B",

         Plaintiffs,

v.

FLUIDMASTER, INC.,

         Defendant.

This Document Relates to:

In re: FLUIDMASTER, INC., WATER
CONNECTOR COMPONENTS
PRODUCTS LIABILITY LITIGATION

MDL No. 2575

The Honorable Robert M. Dow, Jr.

## **PLAINTIFFS' COMPLAINT AND JURY DEMAND**

Plaintiffs, American Select Insurance Company, The Cincinnati Insurance

Company, Erie Insurance Company, Erie Insurance Exchange, Erie Insurance

Property & Casualty Company, The First Liberty Insurance Corporation, First

National Insurance Company of America, Harleysville Preferred Insurance

Company, Liberty Insurance Corporation, Liberty Mutual Fire Insurance

Company, Liberty Mutual Insurance Company, LM Insurance Corporation,

2

Peerless Insurance Company, Safeco Insurance Company of America, Safeco Insurance Company of Illinois, Safeco Insurance Company of Indiana, Universal Property & Casualty Insurance Company, Westfield Insurance Company, and Westfield National Insurance Company, as subrogees of the Insureds listed on the attached "Schedule A" and "Schedule B", by and through their counsel, Law Offices of Robert A. Stutman, P.C., hereby bring this Complaint against Defendant, Fluidmaster, Inc., and aver as follows:

## NATURE OF THE ACTION

1.     This action seeks to recover damages caused by defects associated with Fluidmaster, Inc.'s ("Fluidmaster") "NO-BURST" Water Supply Lines (hereinafter, "NO-BURST Lines"), which are used to transport water from a water supply pipe to a plumbing fixture (e.g., a toilet, faucet, dishwasher, etc.).

2.     The NO-BURST Lines are braided stainless steel supply lines that primarily consist of three parts: the inner flexible tubing, the outer braided steel wire designed to protect the tubing, and the compression and/or coupling nuts that connect the lines to adjacent plumbing fixtures. Because they can be installed in tight spaces, braided stainless steel supply lines have found widespread application in residential and commercial plumbing systems.

3.     At all times material hereto, Fluidmaster designed, manufactured, distributed, and sold NO-BURST Lines.

3

4.      Plaintiffs are insurers who have made payments to or on behalf of their insureds (hereinafter, the "Insureds") for damages caused by Fluidmaster's NO-BURST Lines, and as a result of such payments, are subrogated to the rights of their insureds as against Fluidmaster.

5.      "Schedule A" is a spreadsheet that lists all of Plaintiffs' Insureds who suffered damages that were caused by the fracture of a plastic coupling nut attached to a NO-BURST LINE. The spreadsheet includes the Insureds' names, dates of loss, loss locations and damage amounts.

6.      "Schedule B" is a spreadsheet that lists all of Plaintiffs' Insureds who suffered damages that were caused by the failure of the stainless steel wire braiding and inner rubber tubing (hereinafter, collectively referred to as the "Hose Body") associated with the "NO-BURST" Lines.

7.      As used herein, the term "Plaintiffs' Insureds" shall specifically refer to the Insureds listed on Schedules A and B.

## THE PARTIES

8.      Plaintiff, American Select Insurance Company, is a corporation organized under the laws of the state of Ohio, with a principal place of business located at One Park Circle, Westfield Center, OH  44251.

4

9.      Plaintiff, The Cincinnati Insurance Company, is a corporation organized under the laws of the state of Ohio, with a principal place of business located at 6200 S. Gilmore Road, Fairfield, Ohio  45014.

10.      Plaintiff, Erie Insurance Company, is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania  16530.

11.      Plaintiff, Erie Insurance Exchange, is an unincorporated, subscriber-owned reciprocal insurance exchange domiciled in the Commonwealth of Pennsylvania, with its principal place of business located at 100 Erie Insurance Place, Erie, PA  16530.

12.      Plaintiff, Erie Insurance Property & Casualty Company, is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530.

13.      Plaintiff, The First Liberty Insurance Corporation, is a corporation organized under the laws of the state of Illinois, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

14.      Plaintiff, First National Insurance Company of America, is an insurance company organized under the laws of the state of New Hampshire, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

5

15.     Plaintiff, Harleysville Preferred Insurance Company, is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 335 Maple Avenue, Harleysville, PA  19438.

16.     Plaintiff, Liberty Insurance Corporation, is a corporation organized under the laws of the state of Illinois, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

17.     Plaintiff, Liberty Mutual Fire Insurance Company, is an insurance company organized under the laws of the state of Wisconsin, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

18.     Plaintiff, Liberty Mutual Insurance Company, is an insurance company organized under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

19.     Plaintiff, LM Insurance Corporation, is a corporation organized under the laws of the state of Illinois, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

20.     Plaintiff, Peerless Insurance Company, is an insurance company organized under the laws of the state of New Hampshire, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

6

21.    Plaintiff, Safeco Insurance Company of America, is an insurance company organized under the laws of the state of New Hampshire, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

22.    Plaintiff, Safeco Insurance Company of Illinois, is an insurance company organized under the laws of the state of Illinois, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

23.    Plaintiff, Safeco Insurance Company of Indiana, is a corporation organized under the laws of the state of Indiana, with a principal place of business located at 175 Berkeley Street, Boston, MA  02116.

24.    Plaintiff, Universal Property & Casualty Insurance Company, is a corporation organized under the laws of the state of Florida, with a principal place of business located at 1110 West Commercial Blvd., Fort Lauderdale, FL  33309.

25.    Plaintiff, Westfield Insurance Company, is a corporation organized under the laws of the state of Ohio, with a principal place of business located at One Park Circle, Westfield Center, Ohio 44251.

26.    Plaintiff, Westfield National Insurance Company, is a corporation organized under the laws of the state of Ohio, with a principal place of business located at One Park Circle, Westfield Center, Ohio  44251.

27.    Defendant, Fluidmaster, Inc., is a California corporation with its corporate headquarters and principal place of business located at 30800 Rancho

7

Viejo Road, San Juan Capistrano, California 92675.  Fluidmaster conducts

substantial business in California and throughout the United States, including the

sale and distribution of its NO BURST Lines.

## JURISDICTION AND VENUE

28.  This Court has personal jurisdiction over each of the named parties.

29.  Each Plaintiff is a citizen of a different state than the Defendant.

30.  The amounts in controversy for each Plaintiff in this matter exceed the

value of $75,000.00 exclusive of interest and costs.

31.  Accordingly, the United States District Court has jurisdiction over this

matter based upon the diversity of citizenship pursuant to 28 U.S.C.A. §1332.

32.  Pursuant to 28 U.S.C.A. §1391, venue is proper within the United

States District Court for the Central District of California because it is the judicial

district within which a substantial part of the events giving rise to the claims

occurred.

## FACTUAL ALLEGATIONS

33.  Fluidmaster, a corporation that conducts business throughout the

United States, designed, manufactured, assembled, tested, labeled, marketed,

advertised, and offered for distribution and sale defective  NO-BURST Lines with

the specific purpose that they be installed by builders, plumbers and consumers in

homes and other buildings throughout the United States. These NO-BURST Lines

8

were designed and introduced as a safe and superior alternative to rigid metal pipes with shutoff valves. Their safety features ("NO-BURST") were lauded as creating a safe product that was of merchantable quality, and fit for its intended and reasonably foreseeable uses.

34.     As evidenced by the name of its product, Fluidmaster pursued an aggressive branding and marketing strategy with respect to its NO-BURST Lines, stating that they are high quality, built with superior materials and only sold after rigorous testing. Specifically, Fluidmaster advertises its NO-BURST Lines as "tough," "heavy-duty," "NSF approved," "reinforced," chlorine resistant, designed for "high flow capacity" and having "high bursting strength." Moreover, for over two decades, Fluidmaster has sold its braided stainless steel supply lines under the registered trademark, NO-BURST®.

35.     Notwithstanding the name of the product, the Hose Bodies associated with Fluidmaster's NO-BURST Lines routinely rupture and burst. The Hose Bodies fail because Fluidmaster used an inferior grade of stainless steel that is susceptible to corrosion during its ordinary and intended use.  Fluidmaster also used inadequate low-pressure flexible inner rubber tubing that easily bursts if the stainless steel braiding intended to protect the tubing corrodes and deteriorates during its ordinary and intended use.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; JURY TRIAL DEMANDED

36.    In addition, the NO-BURST Lines routinely fail because their plastic coupling nuts crack and/or fracture during their ordinary and intended use, thereby allowing water to escape from the NO-BURST Lines and damage property.

37.    Fluidmaster knows and has known of the defects alleged herein and that there was a substantial risk that its NO-BURST Lines would burst, leak, break, or otherwise fail.

38.    Fluidmaster knowingly failed to disclose to consumers and product users that its NO-BURST Lines were subject to serious defects, were unsafe, and posed a substantial risk of failure, in that the Hose Bodies and coupling nuts would fail, thereby allowing water to escape from the NO-BURST Lines and cause damage to real and personal property.

39.    Prior to the purchase and/or use by Plaintiffs' Insureds of the NO-BURST Lines, Fluidmaster was aware that its NO-BURST Lines contained an inherent defect that caused them to burst, rupture, leak, and fail, and that the defect was present at the point of sale.

40.    Despite its knowledge, Fluidmaster did not disclose to its customers or prospective purchasers and users that there was a substantial risk that its NO-BURST Lines would manifest the defects, i.e., the Hose Bodies would rupture or burst and/or the plastic coupling nuts would crack and/or fracture.

10

41.     Consumers who purchased the NO-BURST Lines had no way of knowing that the lines were defective at the point of sale.

42.     Fluidmaster NO-BURST Lines are defective because they do exactly what the name says they are not supposed to do: they burst or crack and allow water to escape from the NO-BURST Lines.

43.     Specifically, Fluidmaster uses a grade of stainless steel that is known to corrode and fracture during the normal and intended use of NO-BURST Lines.

44.     Additionally, Fluidmaster used a low-pressure-rated water-carrying inner tubing that herniates and ruptures if support from the exterior stainless steel braiding is lost.

45.     Finally, Fluidmaster used a plastic coupling nut that cracks and/or fractures during the normal and intended use of NO-BURST Lines.

46.     Fluidmaster had a duty to adequately design and manufacture its NO-BURST Lines to keep their Hose Bodies from bursting and their plastic coupling nuts from breaking, and to provide warnings as to how the NO-BURST Lines can fail because of their defective nature.  Specifically, the NO-BURST Line labels fail to warn that the  Hose  Bodies will corrode and burst and/or that its coupling nut can fracture and break thereby allowing water to escape the supply lines and damage property.  The labels contain no warnings regarding how to avoid these

11

risks, and no disclosure that after the warranty period the lines should be replaced or they may fail.

47.     Without proper warnings, Plaintiffs' Insureds were left on their own to determine whether their NO-BURST Lines were about to burst, break or otherwise fail as a result of their inherent defects.

48.     Upon information and belief, in an attempt to correct the defect, in or around 2003, Fluidmaster changed the design of its NO-BURST Lines to incorporate an inner tubing with a higher pressure rating, to reduce or delay the bursting of the tubing should the exterior stainless steel braiding support be lost to corrosion.

49.     Additionally, around this time, Fluidmaster re-designed its acetal coupling nuts, and upon information and belief, began manufacturing the coupling nuts using glass-reinforced polypropylene, a material that is high in strength and stiffness, and resistant to impacts.  Further, these coupling nuts were re-designed to reduce the sharp transitions within the plastic coupling nut, which are significantly more prone to fracturing than rounded transitions.

50.     However, as evidenced by the catastrophic failures in the NO-BURST Lines experienced by Plaintiffs' Insureds, Fluidmaster's attempts to fix the defects failed.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; JURY TRIAL DEMANDED

51.     Fluidmaster failed to publicize that its NO-BURST Lines (which continued to be sold within its distribution networks) were known to burst and break.  Fluidmaster also did not recall the defective NO-BURST Lines; nor did Fluidmaster notify property owners that the defective NO-BURST Lines could spontaneously fail and should be replaced.

52.     Thus, at all relevant times, and prior to the dates of loss listed in Schedules A and B, Fluidmaster knew that: (a) the risk of the failure of its NO-BURST Lines was substantial due their inherent defects; (b) Plaintiffs' Insureds were unaware of the substantial risk that the NO-BURST Lines would burst or break; (c) Plaintiffs' Insureds had a reasonable expectation that Fluidmaster would disclose these risks and cure the defects associated with their product; and (d) Plaintiffs' Insureds were unaware that their NO-BURST Lines needed to be replaced to avoid sudden potentially catastrophic failure of the NO-BURST Lines, or that they had a specific useful life.

53.     As set forth in detail above, Plaintiffs and their Insureds suffered harm as a result of Fluidmaster's actions because their NO-BURST Lines contained a material defect that caused the Lines to rupture and burst, or break at the coupling nut, causing harm not only to the NO-BURST Lines, but also to other real and personal property.

13

54.    The injuries sustained by Plaintiffs and their Insureds flow directly from the core of common facts surrounding Fluidmaster's misconduct, including, without limitation that:  (a) the NO-BURST Lines suffer from a defect known to Fluidmaster that led the lines to rupture and burst; (b) the NO-BURST Lines suffer from a defect known to Fluidmaster that caused the coupling nuts to crack and/or fracture; (c) the NO-BURST Lines were defective for their intended use at the time of sale; (d) that Fluidmaster did not provide adequate warnings concerning the defective nature of the NO-BURST Lines; and (e) that Fluidmaster, despite knowing of the defects, failed to provide any public notice or warning, or institute a recall to repair or replace the defective NO-BURST Lines.

55.    At all times relevant hereto, Plaintiffs' Insureds owned and/or occupied properties located within the United States (hereinafter, the "Properties") as listed on Schedules A and B.

56.    Prior to the dates of loss listed on Schedules A and B, Plaintiffs issued policies of insurance to the Insureds and provided insurance to the Insureds for their interests in real and personal property at the Properties.  Said insurance policies provided insurance coverage and benefits to the Insureds for damages and losses that occurred at the Properties, including damages and losses caused by NO-BURST Lines.

57.     Prior to the dates of loss listed on Schedules A and B, Fluidmaster designed, manufactured, marketed, sold, and/or distributed the NO-BURST Lines that were properly installed and used at the Properties.

58.     Prior to the dates of loss listed on Schedules A and B, Fluidmaster knew or should have known that the NO-BURST Lines were defective and prone to failure.

59.     On or about the dates of loss listed on Schedules A and B, water leaks and related damage occurred within the Properties.

60.     The water leaks and related damage were caused by failures of the coupling nuts and Hose Bodies associated with the NO-BURST Lines.

61.     With respect to each failure, the coupling nuts either fractured or the Hose Bodies ruptured because the NO-BURST Lines were defective.

62.     The failed NO-BURST Lines and attendant water leaks caused substantial damage to the real and personal property of Plaintiffs' Insureds.

63.     As a result of the defects in the NO-BURST Lines, Plaintiffs' and their Insureds have suffered damages, including significant real and personal property damages caused by water that escaped from burst, ruptured or fractured NO-BURST Lines.

64.     As a result of the water losses and associated damages, each Plaintiff made payments to its Insureds in an amount in excess of $75,000.00, as set forth in

15

Schedules A and B, in accordance with the terms and conditions of the insurance policies issued to its Insureds.

65.   By virtue of their payments made to or on behalf of their Insureds as listed on Schedules A and B, and in accordance with the terms and conditions of the policies of insurance issued by Plaintiffs to their Insureds, Plaintiffs are now contractually, equitably and legally subrogated to their Insureds' rights of recovery against Fluidmaster to the extent of Plaintiffs' payments.

66.   The central issue raised herein – whether Fluidmaster's NO-BURST Lines are defective – is common to all Plaintiffs and their Insureds.

## COUNT I - FRAUDULENT CONCEALMENT

67.   Plaintiffs incorporate each of the foregoing allegations as though fully set forth at length herein.

68.   At all times relevant hereto, Fluidmaster affirmatively concealed from Plaintiffs' Insureds the  defects inherent in the NO-BURST Lines.

69.   Fluidmaster had a duty to inform consumers, including Plaintiffs' Insureds, of the defects, about which Fluidmaster knew or should have known. Specifically, Fluidmaster has known for years of the problems and defects outlined herein through various complaint forums (including, without limitation, its own warranty program) and as the result of lawsuits being filed against Fluidmaster by other injured entities.  Notwithstanding its duty to inform, Fluidmaster has never

16

disclosed the defects to Plaintiffs' Insureds or consumers in general.  To the contrary, Fluidmaster has consistently maintained that its NO-BURST Lines are "NO-BURST," "tough," "heavy-duty," "NSF-approved," "reinforced," chlorine resistant, designed for "high flow capacity" and having "high bursting strength."

70.    Plaintiffs' Insureds could not have discovered the aforementioned defects or Fluidmaster's attempts to avoid disclosure of the defects alleged herein.

71.    Fluidmaster is therefore estopped from pleading any averment that the statute of limitations has expired because it failed to disclose facts that it was obligated to disclose concerning the defects in the NO-BURST Lines.  Fluidmaster actively concealed and misrepresented to Plaintiffs and their Insureds facts that were essential to understanding that Plaintiffs and their Insureds had claims against Fluidmaster, and Fluidmaster thus acted to prevent Plaintiffs and their Insureds from learning that they possessed claims against Fluidmaster.

72.    Fluidmaster is further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its fraudulent concealment.

## COUNT II - STRICT LIABILITY

73.    Plaintiffs incorporate each of the foregoing allegations as though fully set forth at length herein.

17

74.     Prior to the dates of loss listed on Schedules A and B, Fluidmaster was engaged in the business of designing, manufacturing, maintaining, assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing water supply lines, including coupling nuts, Hose Bodies and other component parts.

75.     Prior to the dates of loss listed on Schedules A and B, Fluidmaster designed, manufactured, maintained, assembled, inspected, tested, marketed, packaged, labeled, sold and/or distributed the NO-BURST Lines and their component parts, including the Hose Bodies and/or coupling nuts that failed at the Properties.

76.     At the time the products left the possession, custody and control of Fluidmaster, Fluidmaster knew or had reason to know of the use and purpose for which the NO-BURST Lines were intended.

77.     At the time the products left the possession, custody and control of Fluidmaster, Fluidmaster knew or had reason to know that selling, supplying and/or distributing defective NO-BURST Lines would cause the supply lines to become inherently dangerous instrumentalities for users thereof, including Plaintiffs' Insureds, and thus Defendants owed a duty of care and skill in the design, manufacture, maintenance, assembly, inspection, testing, marketing, packaging, labeling, selling, and/or distribution of the NO-BURST Lines,

18

including their Hose Bodies and coupling nuts, and to further exercise ordinary and reasonable care to ascertain that the NO-BURST Lines were reasonably fit, suitable and safe for their intended and reasonably foreseeable purposes.

78.     At the time the products left the possession, custody and control of Fluidmaster, Fluidmaster had a duty to exercise reasonable care in issuing adequate and sufficient instructions and warnings regarding the proper use and installation of the NO-BURST Lines, along with the hazards posed by defects within the NO-BURST Lines.

79.     At the time the NO-BURST Lines left the possession, custody and control of Fluidmaster, the NO-BURST Lines, including their Hose Bodies and coupling nuts, were in an unreasonably dangerous and defective condition and were unfit, unsuitable and unsafe for their intended purposes.

80.     Fluidmaster failed to inform Plaintiffs' Insureds as to the NO-BURST Lines' susceptibility to sudden failure.  Fluidmaster failed to warn consumers that it was necessary to periodically inspect and replace the NO-BURST Lines, even if the lines had not yet failed or even if the lines were still within their respective warranty periods.

81.     Fluidmaster, after learning that its NO-BURST Lines could burst and/or their coupling nuts could fracture and break, had a post-sale duty to warn

consumers of the possibility that catastrophic failure and flooding could result from the failure of its NO-BURST Lines even when used for their intended purpose.

82.     As a direct, proximate and foreseeable result of the aforesaid negligent, careless, willful, wanton, malicious, grossly negligent and/or reckless acts and/or omissions of Fluidmaster, acting by and through its agents, servants and/or employees in the course and scope of their employment, water leaks occurred at the Properties resulting in substantial damages to Plaintiffs' Insureds' real and personal property, causing them to incur additional expenses and causing certain other losses covered by the policies of insurance issued by Plaintiffs to their Insureds, as set forth in Schedules A and B.

83.     As a result of the water losses and associated damages, each Plaintiff made payments to its Insureds in an amount in excess of $75,000.00, as set forth in Schedules A and B, in accordance with the terms and conditions of the insurance policies issued to its Insureds.

84.     By virtue of their payments made to or on behalf of their Insureds as listed on Schedule A, and in accordance with the terms and conditions of the policies of insurance issued by Plaintiffs to their Insureds, Plaintiffs are now contractually, equitably and legally subrogated to their Insureds' rights of recovery against Fluidmaster to the extent of Plaintiffs' payments.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; JURY TRIAL DEMANDED

85.    In the event that Plaintiffs become obligated to pay additional sums in the future to their Insureds for damages caused by NO-BURST Lines, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

86.    Plaintiffs have further lost prejudgment interest, the exact amount of which Plaintiffs pray leave to insert herein when finally ascertained.

**WHEREFORE**, Plaintiffs demand judgment for damages in their favor against Fluidmaster together with prejudgment and post-judgment interest, attorney's fees and costs of suit.

## COUNT III - NEGLIGENCE

87.    Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth at length herein.

88.    Fluidmaster was negligent in that it failed to use reasonable care when it designed, manufactured, assembled, labeled, tested, distributed and sold its NO-BURST Lines.

89.    As the manufacturer and/or seller of a consumer product, Fluidmaster owed a duty to Plaintiffs' Insureds to provide a safe and quality product, and to provide a product that would perform as it was intended and expected. Fluidmaster also owed a duty to Plaintiffs' Insureds to provide adequate instructions and warnings for proper and safe use of the product.  Fluidmaster

21

further owed a duty to provide Plaintiffs' Insureds with information related to the NO-BURST Lines' reasonable expected life span and information related to their maintenance and replacement.

90.    Fluidmaster breached each of these duties.

91.    As a direct, proximate and foreseeable result of the aforesaid negligent, careless, willful, wanton, malicious, grossly negligent and/or reckless acts and/or omissions of Fluidmaster, acting by and through its agents, servants and/or employees in the course and scope of their employment, water leaks occurred at the Properties resulting in substantial damages to Plaintiffs' Insureds' real and personal property, causing them to incur additional expenses and causing certain other losses covered by the policies of insurance issued by Plaintiffs to their Insureds as set forth in Schedules A and B.

92.    As a result of the water losses and associated damages, each Plaintiff made payments to its Insureds in an amount in excess of $75,000.00, as set forth in Schedules A and B, in accordance with the terms and conditions of the insurance policies issued to its Insureds.

93.    By virtue of their payments made to or on behalf of their Insureds as listed on Schedules A and B, and in accordance with the terms and conditions of the policies of insurance issued by Plaintiffs to their Insureds, Plaintiffs are now

22

contractually, equitably and legally subrogated to their Insureds' rights of recovery against Fluidmaster to the extent of Plaintiffs' payments.

94.     In the event that Plaintiffs become obligated to pay additional sums in the future to their Insureds for damages caused by NO-BURST Lines, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

95.     Plaintiffs have further lost prejudgment interest, the exact amount of which Plaintiffs pray leave to insert herein when finally ascertained.

**WHEREFORE,** Plaintiffs demand judgment for damages in their favor against Fluidmaster together with prejudgment and post-judgment interest, attorney's fees and costs of suit.

## COUNT IV - NEGLIGENT FAILURE TO WARN

96.     Plaintiffs incorporate by reference each of the foregoing allegations.

97.     Fluidmaster manufactured, designed, sold and/or distributed defective NO-BURST Lines which were purchased and/or used by Plaintiffs' Insureds.

98.     Fluidmaster knew or reasonably should have known that its NO-BURST Lines were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable and expected manner.

99.     Fluidmaster knew or reasonably should have known that Plaintiffs' Insureds would not realize that their NO-BURST Lines were defective and posed a

23

danger of causing substantial property damage, both to the product itself, as well as to other real and personal property of Plaintiffs' Insureds.

100.   Fluidmaster failed to adequately warn of the danger or instruct Plaintiffs' Insureds on the safe use of the NO-BURST Lines, and also failed to warn Plaintiffs' Insureds of the risks associated with signs of corrosion of the braided steel or minute fractures of the coupling nut.

101.   A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of these dangers or instructed on the safe use of the product, without limitations, by providing detailed installation and maintenance instructions together with warnings to periodically inspect and/or replace the NO-BURST Lines.

102.   Fluidmaster, after learning that its NO-BURST Lines could suddenly burst and the coupling nut could fracture and break, had a post-sale duty to warn consumers of the possibility that catastrophic failure and flooding could result from the failure of its NO-BURST Lines, even when used for their intended purpose.

103.   Fluidmaster's negligent failure to warn or instruct Plaintiffs' Insureds was a substantial factor in causing the harm to Plaintiffs.

104.   As a direct, proximate and foreseeable result of the aforesaid negligent, careless, willful, wanton, malicious, grossly negligent and/or reckless acts and/or omissions of Fluidmaster, acting by and through its agents, servants

24

and/or employees in the course and scope of their employment, water leaks occurred at the Properties resulting in substantial damages to Plaintiffs' Insureds' real and personal property, causing them to incur additional expenses and causing certain other losses covered by the policies of insurance issued by Plaintiffs to their Insureds, as set forth in Schedules A and B.

105.   As a result of the water losses and associated damages, each Plaintiff made payments to its Insureds in an amount in excess of $75,000.00, as set forth in Schedules A and B, in accordance with the terms and conditions of the insurance policies issued to its Insureds.

106.   By virtue of their payments made to or on behalf of their Insureds as listed on Schedules A and B, and in accordance with the terms and conditions of the policies of insurance issued by Plaintiffs to their Insureds, Plaintiffs are now contractually, equitably and legally subrogated to their Insureds' rights of recovery against Fluidmaster to the extent of Plaintiffs' payments.

107.   In the event that Plaintiffs become obligated to pay additional sums in the future to their Insureds for damages caused by NO-BURST Lines, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

108.   Plaintiffs have further lost prejudgment interest, the exact amount of which Plaintiffs pray leave to insert herein when finally ascertained.

**WHEREFORE**, Plaintiffs demand judgment for damages in their favor against Fluidmaster together with prejudgment and post-judgment interest, attorney's fees and costs of suit.

## COUNT V - VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

109.   Plaintiffs incorporate by reference each of the foregoing allegations.

110.   Plaintiffs bring this action against Fluidmaster for its unlawful, unfair, and/or deceptive business acts and practices pursuant to California's Unfair Competition Law (UCL), Business & Professions Code § 17200 et seq., which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

111.   This claim is predicated on the duty to refrain from unlawful, unfair and deceptive business practices, and Plaintiffs hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.

112.   The UCL prohibits acts of "unfair competition."  As used in this section, "unfair competition" encompasses three distinct types of misconduct:  (a) "unlawful…business acts or practices"; (b) "unfair fraudulent business acts or practices'"; and (c) "unfair, deceptive or misleading advertising."

113.   Fluidmaster committed an unfair business act or practice in violation of the UCL in that Fluidmaster knew that the Hose Bodies and coupling nuts

26

associated with the NO-BURST Lines were defective and that the instructions

provided for installation were inadequate, contradictory and confusing.  It further

knew that Plaintiffs' Insureds could not learn or discover that the NO-BURST

Lines were defective.  Fluidmaster surreptitiously remediated the defects without

warning consumers about the NO-BURST Lines' potential to spontaneously fail

and cause extensive property damage due to flooding.  Fluidmaster's superior

knowledge of the defects and the active concealment created a legal duty to

disclose them.

114.   As alleged in this complaint, Fluidmaster failed to disclose that the

NO-BURST Lines contained a defect that could lead to spontaneous bursting

and/or facture of the coupling nut, and Fluidmaster knew that its installation

instructions were confusing and contradictory.  Fluidmaster's conduct produced no

countervailing benefits to consumers or competition that outweighed such

substantial harm to Plaintiffs and their Insureds.  Because the injuries alleged

occurred without Plaintiffs' Insureds' knowledge, Plaintiffs could not have avoided

such injuries.  One cannot avoid something about which one is unaware.

Accordingly, Fluidmaster has violated the "unfairness" prong of the UCL.

115.   Plaintiffs' Insureds would not have purchased or used the NO-BURST

Lines and/or had them installed and/or allowed them to remain installed and/or

otherwise exposed their real and personal property to catastrophic flooding had

27

Fluidmaster disclosed the propensity for its NO-BURST Lines to spontaneously fail and/or that remediated water supply lines were available to replace the defective ones.

116.    As a result of Fluidmaster's violation of the UCL, Plaintiffs have suffered injury-in-fact and lost money in the amounts set forth on Schedules A and B.

117.    Plaintiffs demand judgment against Fluidmaster and demand declaratory, equitable, and/or injunctive relief requiring Fluidmaster to stop their unlawful, deceptive, and unfair conduct and prohibiting Fluidmaster from continuing to sell the defective NO-BURST Lines; requiring notice to the public at large of the defects associated with the NO-BURST Lines as well as disclosure of the availability of a remediated product and all other relief the Court deems just and equitable.

## COUNT VI - BREACH OF IMPLIED WARRANTY

118.    Plaintiffs incorporate by reference each of the foregoing allegations as though fully set forth at length herein.

119.    Fluidmaster placed into the stream of commerce, and otherwise furnished NO-BURST Lines that were defective and lacked  appropriate instructions and warnings associated with their use thereby breaching the implied

28

warranty of merchantability and the implied warranty of fitness for a particular purpose.

120.   Fluidmaster knew or had reason to know at the time it manufactured, designed, sold and/or distributed the defective NO-BURST Lines that they were required for a particular purpose (supplying water for a toilet, sink, dishwasher or other fixture or appliance), and that Plaintiffs' Insureds were relying on Fluidmaster's skill or judgment to select or furnish such goods.

121.   With the provision of the NO-BURST Lines to customers and end users such as Plaintiffs' Insureds, Fluidmaster impliedly warranted that these products were fit for the ordinary purpose of supplying water to various appliances and/or fixtures within buildings.

122.   Plaintiffs' Insureds relied upon the skill and judgment of Fluidmaster to supply suitable products.

123.   With the provision of the NO-BURST Lines, Fluidmaster also made certain express warranties that the product would be safe for its intended use, including connecting various fixtures and/or appliances to the water supply in residences and/or businesses.

124.   By furnishing NO-BURST Lines that were defective , and lacking any appropriate instructions and warnings, Fluidmaster also breached these express warranties.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; JURY TRIAL DEMANDED

125. As a direct and proximate result of Fluidmaster's breach of the aforesaid warranties, water leaks occurred at the Properties resulting in substantial damages to Plaintiffs' Insureds' real and personal property, causing them to incur additional expenses and causing certain other losses covered by the policies of insurance issued by Plaintiffs to their Insureds, as set forth in Schedules A and B.

126. As a result of the water losses and associated damages, each Plaintiff made payments to its Insureds in an amount in excess of $75,000.00, as set forth in Schedules A and B, in accordance with the terms and conditions of the insurance policies issued to its Insureds.

127. By virtue of their payments made to or on behalf of their Insureds as listed on Schedules A and B, and in accordance with the terms and conditions of the policies of insurance issued by Plaintiffs to their Insureds, Plaintiffs are now contractually, equitably and legally subrogated to their Insureds' rights of recovery against Fluidmaster to the extent of Plaintiffs' payments.

128. In the event that Plaintiffs become obligated to pay additional sums in the future to their Insureds for damages caused by NO-BURST Lines, Plaintiffs pray for leave to amend this Complaint accordingly when the true and exact costs thereof are ascertained.

129. Plaintiffs have further lost prejudgment interest, the exact amount of which Plaintiffs pray leave to insert herein when finally ascertained.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; JURY TRIAL DEMANDED

**WHEREFORE**, Plaintiffs demand judgment for damages in their favor against Fluidmaster together with prejudgment and post-judgment interest, attorney's fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Fluidmaster, as to each cause of action, as follows:

1. For the full extent of the amounts paid by Plaintiffs to their Insureds;

2. For an award of equitable and injunctive relief declaratory, equitable, and/or injunctive relief as requested herein;

2. For prejudgment interest according to proof;

3. For post-judgment interest according to proof;

4. For Plaintiffs' costs of suit herein;

5. For such other and further relief as to the Court may deem just and proper.

//

//

//

//

//

//

31

## JURY TRIAL DEMANDED

Plaintiffs, by their counsel, request a trial by jury on those causes of actions set forth herein.

DATED: January 15, 2015          Respectfully submitted,

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

Timothy E. Cary, Attorney for Plaintiffs
Ahmed S. Diab, Attorney for Plaintiffs

32